UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HARMANPREET SINGH,

                Petitioner,

         - against-

LADEON FRANCIS, *in his official capacity as
Acting Field Office Director of New York, Immigration
and Customs Enforcement*; KRISTI NOEM,
*in her official capacity as Secretary of the U.S.
Department of Homeland Security*; PAMELA BONDI,
*in her official capacity as U.S. Attorney General*;
TODD M. LYONS, *in his official capacity as Acting
Director of U.S. Immigration and Customs Enforcement*;
WARDEN OF M.D.C. BROOKYLN,

                Respondents.
-------------------------------------------------------------------x

**MEMORANDUM AND ORDER**
26-CV-00344 (OEM)

ORELIA E. MERCHANT, United States District Judge:

       Petitioner Harmanpreet Singh ("Petitioner") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his ongoing detention by Immigration and Customs Enforcement ("ICE") as a due process violation. *See* First Amended Verified Petition, Dkt. 5 (the "Petition" or "Pet."). Petitioner was arrested and initially detained by ICE on March 8, 2024, in New York, New York, and he is currently detained at the Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"). Petitioner seeks immediate release from custody or in the alternative, a bond hearing where the government bears the burden of justifying his continued detention. *Id.* ¶ 7.

       For the following reasons, the Petition is granted.

## BACKGROUND

Petitioner is a native of India. *Id.* ¶ 19. On December 3, 2017, he was encountered by U.S. Customs and Border Patrol ("CBP") near Otay Mesa, California, outside of a port of entry. Declaration of Roberto Rodriguez ¶ 3, Dkt. 9-1 ("Rodriguez Decl."). Petitioner admitted that he was an Indian national and did not possess any immigration documents to enter or remain in the United States legally. *Id.* CBP then arrested Petitioner and served him with a Notice to Appear ("NTA") charging him with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. *Id.*; Rodriguez Decl., Exhibit B at 2, Dkt. 9-3. Petitioner was released on bond in February 2018 and filed for asylum within the one-year filing deadline. Rodriguez Decl. ¶ 4; Pet. ¶ 19.

Petitioner was arrested twice for non-violent crimes in Indiana over a six-month period in 2023: first for driving while intoxicated and drug possession in February 2023 and second for drug possession in August 2023. Pet. ¶ 20; Rodriguez Decl. ¶ 6; Rodriguez Decl., Exhibit F at 2-3, Dkt. 9-7 ("IJ Bond Decision"). The charges from August 2023 were dismissed, but the charges from February 2023 remain pending due to Petitioner's inability to appear in court while in ICE custody. Pet. ¶ 20.

After discovering Petitioner's criminal charges in Indiana, on February 8, 2024, ICE ordered Petitioner to appear at 26 Federal Plaza, New York, New York, for an interview on March 8, 2024. Rodriguez Decl. ¶ 6. ICE officers arrested Petitioner when he reported for the interview on March 8, 2024, and served him with an I-200 Warrant of Arrest. *Id.*

On May 10, 2024, an Immigration Judge ("IJ") issued a written decision ordering Petitioner's removal to India. *Id.* ¶ 7. Petitioner filed a timely appeal on February 11, 2025, and

the Board of Immigration Appeals (the "BIA") remanded the matter to the IJ based on ineffective assistance of counsel. *Id.*; Pet. ¶ 22.

On March 21, 2025, Petitioner requested a bond hearing. Pet. ¶ 23.

On March 31, 2025, an IJ conducted a bond hearing and denied bond on May 6, 2025. Rodriguez Decl. ¶ 8; IJ Bond Decision. Petitioner timely appealed the bond denial. Pet. ¶ 23. On September 9, 2025, the BIA dismissed Petitioner's appeal of the bond denial. *Id.*

On April 24, 2025, the IJ ordered Petitioner removed. *Id.* ¶ 24. Petitioner appealed the removal order, and on January 13, 2026, the BIA dismissed the appeal.[1] *Id.* ¶ 26. Petitioner subsequently filed a Petition for Review ("PFR") and a motion to stay removal with the Second Circuit. *Id.*

Petitioner is currently detained at the MDC Brooklyn. Rodriguez Decl. ¶ 14.

## PROCEDURAL HISTORY

On January 20, 2026, Petitioner commenced this action by filing a petition for a writ of habeas corpus. *See generally* Verified Petition, Dkt. 1. On January 21, 2026, the Court issued an order to show cause why the petition should not be granted, thereby directing respondents LaDeon Francis, Kristi Noem, Pamela Bondi, and Todd Lyons to file a return by January 26, 2026; ordering the parties to appear before the Court for a hearing on January 29, 2026, at 2 p.m.; and ordering that Petitioner not be moved from this District "until further order of this Court." *See* Order to Show Cause, Dkt. 4 (the "Order to Show Cause").

Petitioner filed an amended petition on January 22, 2026. *See generally* Pet.[2]

---

[1] Petitioner alleges that the briefing schedule was uploaded and backdated on the online filing system such that he was unable to file a brief by the deadline. Pet ¶¶ 25-26.

[2] Petitioner amended his petition to add the Warden of the MDC Brooklyn as a Respondent. The Court refers to LaDeon Francis, Kristi Noem, Pamela Bondi, Todd Lyons, and the Warden of the MDC Brooklyn collectively as "Respondents."

Respondents filed a motion for an extension of time to file a response to the Petition, *see* Letter from Respondents to the Court (Jan. 23, 2026), Dkt. 6, which the Court granted on January 26, 2026. In granting the extension, the Court also rescheduled the hearing to February 5, 2026, at 11:45 a.m. *See* Order, dated Jan. 26, 2026.

Respondents filed their responsive papers on January 29, 2026. *See* Memorandum of Law in Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Issued, Dkt. 9 (the "Opposition" or "Opp'n"). On February 3, 2026, Petitioner filed a reply. *See* Petitioner's Reply to Respondent's Memorandum of Law in Response to Order to Show Cause, Dkt. 10.

The Court held a hearing on the Order to Show Cause on February 5, 2026, at 11:45 a.m.

## DISCUSSION

### A. Statutory Basis for Petitioner's Detention

The threshold issue in this case is whether Petitioner is subject to the mandatory detention authority of 8 U.S.C. § 1231 ("Section 1231" or "§ 1231") or the discretionary detention authority of 8 U.S.C. § 1226 ("Section 1226" or "§ 1226").

Section 1231 governs the detention of noncitizens[3] subject to final orders of removal. *Wang v. Ashcroft*, 320 F.3d 130, 145 (2d Cir. 2003). An IJ's order of removal becomes final "upon dismissal of an appeal by the [BIA]." 8 C.F.R. § 1241.1(a); *Chupina v. Holder*, 570 F.3d 99, 103 (2d Cir. 2009). Section 1231 establishes a 90-day "removal period" within which the government must effectuate a removal order after it becomes final and during which the government "shall" detain the noncitizen until such removal. *See* 8 U.S.C. §§ 1231(a)(1)(A), (a)(1)(B)(i), (a)(2)(A) ("During the removal period, the Attorney General shall detain the alien.").

---

[3] The Court uses the terms "noncitizen" and "alien" interchangeably.

Section 1231(a)(1)(B) sets forth when the removal period begins and what events are relevant:

> The removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Here, the parties do not dispute that there is a final order of removal as to Petitioner. *See* Pet. ¶ 26 (noting the BIA's dismissal of Petitioner's removal order appeal on January 13, 2026); Opp'n at 4 (same). According to Respondents, the text of § 1231(a)(1)(B) dictates the result here: the order of removal is final such that § 1231(a)(1)(B)(i) applies, and no court has ordered a stay of removal such that § 1231(a)(1)(B)(ii) applies. Opp'n at 12. Petitioner, however, contends that his removal period has not yet started and he is therefore not subject to mandatory detention under § 1231. Pet. ¶¶ 31-32.

Petitioner's position rests on the Second Circuit's Forbearance Policy for noncitizens who file PFRs and move to stay removal. Under this policy, noncitizens who file PFRs and move to stay removal may not be removed while the motion to stay is pending. *See In re Immigr. Petitions for Rev. Pending in U.S. Ct. of Appeals for Second Cir.*, 702 F.3d 160, 162 (2d Cir. 2012). While the Second Circuit has not answered the question of whether detention during the stay of removal under the Forbearance Policy is covered by § 1231 or § 1226, it has held that where a noncitizen subject to a final removal order files a PFR and the Second Circuit formally grants their motion to stay the removal pending review, their detention is governed by § 1226 rather than § 1231. *See Hechavarria v. Sessions*, 891 F.3d 49, 58 (2d Cir. 2018). Nevertheless, in light of "the structure

5

and logic" of § 1231 and the practical reality that the Forbearance Policy is a "very clear impediment" to a noncitizens immediate removal, *Hechavarria*, 891 F.3d at 55, 57, "the overwhelming majority of courts in this Circuit have found that the [Forbearance Policy] amounts to a 'court ordered stay of removal of the alien' and that detainees with a pending petition for review are detained pursuant to § 1226," *Rodriguez Sanchez v. Decker*, 431 F. Supp. 3d 310, 314 (S.D.N.Y. 2019) (quoting *Falodun v. Session*, 6:18-cv-06133-MAT, 2019 WL 6522855, at *5 (W.D.N.Y. Dec. 4, 2019)); *see also Doe v. Decker*, 21 Civ. 5257 (LGS), 2021 WL 6066015, at *2 n.1 (S.D.N.Y. Nov. 19, 2021) (collecting cases).

As Petitioner has filed a PFR, *see Singh v. Bondi*, 26-73 (2d Cir. Jan. 13, 2026), Dkt. 5, and a motion to stay removal, *see Singh*, 26-73 (2d Cir. Jan. 15, 2026), Dkt. 8, with the Second Circuit, the Forbearance Policy operates as a de facto stay, thereby assuring that removal will not occur while the motion to stay is pending. *See Jack v. Decker*, 21-CV-10958 (VSB) (RWL), 2022 WL 4085749, at *5 (S.D.N.Y. Aug. 19, 2022), *report & recommendation adopted*, 21-CV-10958 (VSB), 2022 WL 16836918 (S.D.N.Y. Nov. 8, 2022). Given that § 1231 "assumes that [an] immigrant's removal is both imminent and certain" such that "no substantive impediments remain to the immigrant's removal," *Hechavarria*, 891 F.3d at 55, Petitioner is not subject to mandatory detention under § 1231.

Respondents' arguments to the contrary are unavailing. Respondents cite only a handful of cases that take a minority view on the Forbearance Policy, Opp'n at 12-13, and Respondents' reading of the statute does not comport with the practical reality that Petitioner's removal is neither "imminent [nor] certain," *Hechavarria*, 891 F.3d at 55.

Accordingly, for reasons consistent with the majority view, the Court finds that § 1226 governs Petitioner's detention. *See Rodriguez Sanchez*, 431 F. Supp. 3d at 314.

**B. Due Process**

The Court now turns to whether ICE's detention of Petitioner violates his due process rights. The Fifth Amendment's Due Process Clause prevents the government from depriving any person of "life, liberty, or property, without due process of law." U.S. CONST. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)); *see also Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Valdez v. Joyce*, 803 F. Supp. 3d 213, 217 (S.D.N.Y. 2025) ("Even noncitizens have a liberty interest in continued freedom from civil immigration confinement." (citing *Lopez v. Sessions*, 18 Civ. 4189 (RWS), 2018 WL 2932726, at *12 (S.D.N.Y. June 12, 2018))); *Lopez*, 2018 WL 2932726, at *12 (holding that "Petitioner's re-detention, without prior notice, a showing of changed circumstances, or a meaningful opportunity to respond, does not satisfy the procedural requirements of the Fifth Amendment.").

The Second Circuit has held that the *Mathews v. Eldridge*, 424 U.S. 319 (1976), three-factor balancing test applies when determining the adequacy of process in the context of civil immigration confinement. *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020). The determination of what procedures are required under the Fifth Amendment requires consideration of: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of

additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

With respect to the first prong of the *Mathews* test, Petitioner invokes "the most significant liberty interest there is—the interest in being free from imprisonment." *Velasco Lopez*, 978 F.3d at 851 (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). A person's liberty cannot be abridged without "adequate procedural protections." *Zadvydas*, 533 U.S. at 690. Petitioner's liberty interest is clearly established, and the first prong of the *Mathews* inquiry favors him. *See Valdez*, 803 F. Supp. 3d at 217-18.

With respect to the second prong of the *Mathews* test, Petitioner contends that requiring noncitizens to bear the burden of proving that they are neither dangerous nor a risk of flight at a bond hearing "significantly raises the risk of an erroneous deprivation of liberty." Pet. ¶ 48. As reflected in the IJ Bond Decision, the BIA requires that noncitizens in Department of Homeland Security custody "establish to the satisfaction of the [IJ]" that they are not a danger, flight risk, or threat to national security. IJ Bond Decision at 2; *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Petitioner asserts that "[b]ecause he was unable to prove a negative to the satisfaction of the IJ, [he] has been erroneously detained for more than twenty months." Pet. ¶ 48.

*Velasco Lopez* is particularly instructive on this prong of the *Mathews* test and is factually similar to the case here. In that case, the noncitizen petitioner was detained by ICE for 15 months after being arrested for driving while intoxicated. *Velasco Lopez*, 978 F.3d at 846-47. He was also facing charges related to a bar fight. *Id.* at 847. Although neither charge had resulted in a conviction and the charges related to the bar fight were dismissed, the petitioner was twice denied bond as he was unable to carry the burden of proving he was neither dangerous nor a flight risk.

*Id.* The petitioner subsequently filed a petition for a writ of habeas corpus challenging the procedures employed in his bond hearings on due process grounds. *Id.* at 847-48. The district court granted the petition and ordered a new bond hearing where the government was required to prove he was a danger to the community or a flight risk by clear and convincing evidence. *Id.* at 848. When afforded the new hearing with the shifted burden, the petitioner was released on bond. *Id.* The Second Circuit affirmed the district court's decision, concluding that the court correctly ordered a new bond hearing where the government bore the burden of proof. *Id.* at 846.

Like the petitioner in *Velasco Lopez*, Petitioner here has been denied bond after being unable to prove that he is neither dangerous nor a flight risk, primarily due to his criminal history. *See* IJ Bond Decision at 2-3. The IJ's written decision reflects that the procedural requirement of proving a negative "seriously impacted his ability to secure bail," *Velasco Lopez*, 978 F.3d at 852, as the IJ notes that Petitioner presented "limited evidence to mitigate the seriousness of his offenses" and was "unable to provide the Court with any information" as to an alleged misbehavior issue that occurred while he was detained, IJ Bond Decision at 3, 4. As noted by the *Velasco Lopez* court, detainees are disadvantaged by a lack of information when the burden is placed upon them to prove that they are not dangerous or a flight risk, and the risk of erroneous deprivation created by that informational asymmetry is remedied when the burden is shifted. 978 F.3d at 853. "Moreover, 'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Id.* (quoting *Zadvydas*, 533 U.S. at 701). Petitioner has been detained for over 23 months, which is even longer than the 15-month detention found to necessitate further process in *Velasco Lopez*. *See id.* Accordingly, the second prong of the *Mathews* inquiry favors Petitioner.

9

As for the third prong, Respondents' interest in detaining "individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Valdez*, 803 F. Supp. 3d at 218 (first quoting *Velasco Lopez*, 978 F.3d at 854; then quoting *Zadvydas*, 533 U.S. at 690). As in *Velasco Lopez*, the Court finds that "shifting the burden of proof to the Government to justify continued detention promotes the Government's interest" as it "minimize[es] the enormous impact of incarceration in cases where it serves no purpose." *Velasco Lopez*, 978 F.3d. at 854. The Government has "no interest in the continued incarceration of an individual who it cannot show to be either a risk or a danger to his community." *Id.* at 857. Therefore, the third prong of the *Mathews* inquiry favors Petitioner.

Taken together, Petitioner's ongoing detention violates his due process rights. *See Valdez*, 803 F. Supp. 3d at 219; *Lopez*, 2018 WL 2932726, at *15. Given the deprivation of Petitioner's liberty, the absence of deliberative process in the form of a constitutionally adequate bond hearing, and the statutory and constitutional rights implicated, a writ of habeas corpus is the only form of relief and the most appropriate remedy.

## CONCLUSION

For the foregoing reasons, the Petition is granted. Respondents are ordered to provide Petitioner with an individualized bond hearing before an Immigration Judge by March 4, 2026. At that hearing, the Government shall bear the burden of demonstrating, by clear and convincing evidence, that Petitioner is a danger to the community or a risk of flight. *See Velasco Lopez*, 978 F.3d at 855-56. In the event Respondents fail to provide Petitioner with such a bond hearing by March 4, 2026, Respondents are ordered to release Petitioner immediately.

By March 5, 2026, Respondents shall certify compliance with this order by filing on the docket Petitioner's constitutionally adequate bond hearing date and outcome and/or release date.

Counsel for Petitioner may file an application for attorney's fees and costs pursuant to the Equal Access to Justice Act, 5 U.S.C. § 504 and 28 U.S.C. § 2412, within the time provided by the Local Rules.

The Clerk of Court is respectfully directed to enter judgment in accordance with this Memorandum and Order and close this case.

SO ORDERED.

                                                                                                      /s/
                                                                                              ORELIA E. MERCHANT
                                                                                              United States District Judge

February 24, 2026
Brooklyn, New York